IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KIMBERY KOPCHAK,** *ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED*, | CIVIL ACTION |
| **Plaintiffs,** | |
| v. | No. 13–5884 |
| **UNITED RESOURCE SYSTEMS, et al.,** | |
| **Defendants.** | |

**Goldberg, J.**                                                                                                   **August 4, 2016**

## MEMORANDUM OPINION

Named Plaintiff, Kimberly Kopchak, has brought claims on behalf of herself and a putative class against Defendants, United Resource Systems ("URS"), Michael Lammers, and Richard Lammers, for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Plaintiff alleges that Defendants failed to inform consumers, through initial collection letters, that they must dispute their debts *in writing* under § 1692g(a)(4) of the FDCPA in order for the Defendants to be required to obtain verification of the debt owed. The parties have agreed to settle, and have submitted a comprehensive class settlement agreement for this Court's approval.

Before me is the parties' joint motion to (1) conditionally certify this case as a class action, and (2) grant preliminary approval of the parties' class settlement agreement. A preliminary fairness hearing was held on February 26, 2016. For the reasons that follow, I will grant the parties' joint motion.

I.      **FACTUAL AND PROCEDURAL HISTORY** [1]

On April 2, 2013, Defendant URS mailed Plaintiff a collection letter requesting payment for outstanding medical bills. (Compl. ¶¶ 13–15.) The letter stated the following:

> Unless you, the consumer, notify this collection agency within thirty days after receipt of this notice that you dispute the validity of the debt or any portion thereof, the debt will be assumed to be valid by this collection agency. If you, the consumer, notify this collection agency within thirty days after receipt of this notice, that the debt or any portion thereof is disputed, this collection agency will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by this collection agency. Upon written request within thirty days after receipt of this notice, the collection agency will provide you with the name and address of the original creditor, if different from the current creditor.

(Id. at ¶ 17.) The parties agree that each potential class member received the same, standardized collection letter with the above-quoted language. (See Doc. No. 36, p. 6 ¶¶ (b), (c).)

Section 1692g(a)(4) of the FDCPA states that within five days of an initial communication with a consumer, a debt collector must send the consumer a written notice containing "a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy . . . will be mailed to the consumer by the debt collector[.]" 15 U.S.C. § 1692g(a)(4) (emphasis added).[2]

---

[1] A detailed factual recitation of this case is included in my previous Order disposing of the parties' cross motions for judgment on the pleadings. (See Doc. No. 22.) I incorporate by reference that discussion, and will repeat only those facts necessary to rule on the parties' joint motion currently before me.

[2] The purpose of the FDCPA is to prohibit unfair debt collection practices by debt collectors, and to assure that all consumers receive adequate notice of their rights under the law. Wilson v. Quadramed Corp., 225 F.3d 350, 353-54 (3d Cir. 2000); Hishmeh v. Cabot Collection Sys., L.L.C., 2014 WL 460768, at *2 (E.D. Pa. Feb. 5, 2014). To uphold these objectives, the United States Court of Appeals for the Third Circuit views debt collection practices through the lens of the "least sophisticated debtor" to ensure that all consumers are protected from abusive debt collection practices. Wilson, 255 F.3d at 354. A collection notice is in violation of the FDCPA if the language would confuse the least sophisticated debtor or contradicts her rights as a consumer under the law. See Hishmeh, 2014 WL 460768 at *3-4 (holding that a debt collector violated the FDCPA by not making it clear that plaintiff had to ask for validation of his debt in writing).

On October 4, 2013, Plaintiff filed her class action complaint, alleging that Defendants were liable for failing to notify her that she must dispute her debt *in writing* in order for it to be effective under the FDCPA. (Compl. ¶¶ 19–20.)

On April 1, 2014, Plaintiff filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). I granted her motion in part, concluding that URS violated § 1692g(a)(4) because "URS's notice could easily confuse the 'least sophisticated [debtor]' because it did not specify that [a] writing is the only form of communication legally permitted to dispute a debt."[3] (Doc. No. 22, p. 4 ¶ 9) (citing Hishmeh, 2014 WL 460768 at *3-4). Defendants Michael and Richard Lammers had also filed a motion for judgment on the pleadings, which I denied in its entirety. The parties subsequently agreed to settle, and on June 23, 2015, submitted the joint motion currently before me.

## II.   ANALYSIS

### A.  Preliminary Certification of the Settlement Class

The parties seek only certification of a settlement class, not a litigation class. The proposed "Settlement Class" consists of the following individuals:

> All consumers in the Commonwealth of Pennsylvania to whom URS mailed an initial communication in connection with its attempt to collect a debt, which failed to inform consumers they must dispute their debts *in writing* to be considered valid, during the period beginning October 4, 2012, and ending May 8, 2015.

(Ex. A, ¶ 8, Doc. No. 36.) (emphasis in original). As defined, the parties estimate that the proposed settlement class is comprised of approximately seven hundred eighteen (718) individuals ("Class Members" or "Claimants").

---

[3] I denied Plaintiff's motion insofar as she sought a ruling as to Defendants Michael and Richard Lammers' liability for personal involvement.

Although the parties request class certification for settlement purposes only, I maintain a threshold responsibility to ensure that the proposed class satisfies the requirements of Federal Rule of Civil Procedure 23. Specifically, a settlement class "must satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig., 55 F.3d 768, 778 (3d Cir. 1995). Additionally, the proposed class must satisfy the relevant requirements of Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).

1. Numerosity

The proposed class size of 718 individuals easily satisfies Rule 23(a)(1)'s requirement that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); see also Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) ("[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.").

2. Commonality

Commonality requires that class members' claims "depend upon a common contention," the resolution of which will "resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). The proposed settlement class shares common factual and legal contentions—namely, that each class member received a standardized collection letter from URS, which failed to notify him or her that any dispute he or she wished to raise must be in writing to be effective under § 1692g(a)(4) of the FDCPA. Therefore, common questions of both law and fact exist among the individual class members to satisfy the commonality requirement of Rule 23(a)(2).

3. Typicality

The claims of the class representative must be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). "The concepts of commonality and typicality are broadly defined and tend to merge." Barnes v. Am. Tobacco Co., 161 F.3d 127, 141 (3d Cir. 1998) (quoting Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)) (internal quotation marks omitted). A named plaintiff's claim is typical of the class if it "arises from the same event or practice or course of conduct that gives rise to the claims of the class members," and is based on the same legal theory. Id. at 141. Here, Plaintiff's claim is premised on the same standardized collection letter that she—and each class member—received from URS, and her claim proceeds under the same legal theory as that of the class (i.e., violation of § 1692g(4)). Accordingly, the typicality requirement of Rule 23(a)(3) is satisfied.

4. Adequacy of Representation

Lastly, Rule 23(a)(4) requires that the "representative [party] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This element has two prongs: (1) "the plaintiff's attorney[s] must be qualified, experienced, and generally able to conduct the proposed litigation"; and (2) "the plaintiff must not have interests antagonistic to those of the class." Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); Jackson v. Se. Pennsylvania Transp. Auth., 260 F.R.D. 168, 192 (E.D. Pa. 2009).

As to the first prong, I conclude that Plaintiff's attorneys are qualified, experienced, and appear generally able to conduct the proposed litigation. Andrew T. Thomasson, Craig Thor Kimmel, and Amy Lynn Bennecoff Ginsburg have all submitted sworn declarations detailing their qualifications with respect to both class actions and FDCPA litigation. (See Pl.'s Ex. B, C, D, Doc. No. 36.) Mr. Thomasson has served as class counsel in fourteen (14) separate class

5

action lawsuits since 2013. (Pl.'s Ex. B, p. 3 ¶ 5.) Mr. Kimmel's practice has focused on FDCPA litigation for the past several years, and he manages his firm's Consumer Protection Practice Group. (Pl.'s Ex. C ¶¶ 3–4.) Mr. Kimmel has also handled more than two thousand (2000) federal cases involving FDCPA claims. (Id. at ¶ 12.) Ms. Ginsburg focuses her practice on consumer litigation, primarily involving FDCPA claims, and was certified as class counsel in 2012 before the District of New Jersey. (Pl.'s Ex. D ¶¶ 19, 21.)

As to the second prong, I find no antagonistic interests between Plaintiff and the proposed settlement class. "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Windsor, 521 U.S. at 625-26 (internal quotation marks omitted). In essence, the interests of a named plaintiff must be aligned with those of the class. Id. at 626. Here, Plaintiff suffered the same legal injury as did those individuals defined in the proposed settlement class, and she seeks relief for that injury. As such, I find the second prong to be satisfied, and the requirements of Rule 23(a) met.

     5.   Fed. R. Civ. P. 23(b)(3)

A class action may be maintained only if the requirements of Rule 23(a) are satisfied, *and* the court finds that the "questions of law or fact common to the class predominate over any questions affecting only individual members, and … a class action is superior to any other available method for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).[4]

---

[4] Rule 23(b)(3) includes a non-exhaustive list of factors pertinent to a court's "close look" at the predominance and superiority criteria: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Windsor, 521 U.S. at 615-16. Because, as will be discussed *infra*, (1) many class members are likely unaware of their statutory rights, or that a violation of those rights even occurred; (2) the FDCPA limits recovery in class actions; and (3) the conduct at issue involves a standardized collection letter, I conclude that these factors weigh in favor of adjudicating this matter as a class action.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Windsor, 521 U.S. at 623. While commonality and predominance present similar considerations, the predominance standard is "far more demanding." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311 (3d Cir. 2008) (citations omitted). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S.Ct. 1184, 1191 (2013) (emphasis in original). Individual questions need not be absent, so long as common questions predominate. Id. at 1196. When conducting a predominance inquiry, a court must consider the elements of the underlying cause of action. In re Flonase Antitrust Litig., 284 F.R.D. 207, 219 (E.D. Pa. 2012) (quoting John Fund, Inc. v. Halliburton Co., 131 S.Ct. 2179, 2184 (2011)).

As defined, the proposed class presents a common question that predominates over any individual question(s). As noted, I granted Plaintiff's judgment on the pleadings because, on the face of Defendant URS's letter, it was clear that it did not conform to the requirements of § 1692g(a)(4). Thus, the common question that predominates in this litigation is: "Did you, as a Class Member, receive the collection letter at issue?" Because, by definition, the proposed class is comprised of individuals to whom the collection letter at issue was mailed, it is clear that this common question predominates. In other words, there is no indication that this cause of action requires "individual treatment" of claims. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 311. Therefore, the predominance inquiry of Rule 23(b)(3) is satisfied.

To establish superiority, a plaintiff must demonstrate that resolution by class action will "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other

undesirable results." Windsor, 521 U.S. at 615. I must "balance in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." In re Flonase, 284 F.R.D. at 234. Given the very specific common thread (i.e., the standardized collection letter) tying Class Members' claims together, the judicial economy of class adjudication is plainly superior to hundreds of individual cases challenging the exact same, standardized conduct.[5]

Having concluded that the requirements of Rule 23(a) and 23(b)(3) are met, I will grant the parties' joint motion insofar as it seeks conditional certification of the proposed Settlement Class. I turn next to the proposed Class Settlement Agreement itself.

### B. Preliminary Approval of the Class Settlement Agreement[6]

The material terms of the Class Settlement Agreement are as follows:

- URS will create a settlement fund of **$7,500** ("Class Recovery"), which the Class Administrator, Heffler Claims Group ("Class Administrator"), will distribute pro rata among those Settlement Class Members who do not exclude themselves from the Settlement.

- Given that there are 718 Claimants, each would receive a check for approximately **$10.44**.[7] The checks will be deemed "void" if not cashed or deposited within sixty (60) days from the date of issuance.

- If any portion of the Class Recovery remains after the void date on the Claimants' checks, these residual funds will be donated as a *cy pres* award to the Pennsylvania Legal Aid Network, Inc., a non-profit organization delivering free legal services to low-income Pennsylvanians.

---

[5] Moreover, as will be discussed *infra*, because the conduct involved a technical statutory violation, as opposed to allegations of *actual* harm, many Class Members are likely unaware of their statutory rights, or that a violation of those rights even occurred. Therefore, class adjudication will allow Class Members to receive "valuable consideration for what, for most individuals, is likely to be a technical violation that they did not know occurred." See e.g., Harlan v. Transworld Sys., Inc., 302 F.R.D. 319, 326 (E.D. Pa. 2014).

[6] This Court adopts the defined terms set forth in the proposed "Class Settlement Agreement" for purposes of this Memorandum Opinion, unless otherwise noted. (See Doc. No. 36, Ex. A.)

[7] This amount of $10.44 assumes that all 718 class members will receive a pro rata share of $7,500. In the event that certain class members opt out or otherwise exclude themselves from this litigation, the amount will increase accordingly based on the pro rata method of distribution.

- URS agrees to pay Named Plaintiff a total of **$2,500** for both statutory damages ($1,000) under § 1692k(a)(2)(B)(i), and her role as Class Representative ($1,500).

- URS agrees to pay Class Counsel **$25,000** in full satisfaction of attorneys' fees and costs associated with this litigation. This figure shall not in any way reduce the settlement amounts to be provided to the Settlement Class Members.[8]

- Claimants bound by the Settlement Agreement will release any claim against URS "arising out of or related to" the collection letter at issue, but such release shall have no impact on the underlying debts which URS was attempting to collect, which are unaffected by this Agreement.

- Any Claimant may choose to be excluded from the Settlement by opting out, or may object to the Settlement Agreement, within forty-five (45) days from the mailing of the proposed notice.

(Doc. No. 36, Ex. A, pp. 5–8, ¶¶ 11–18.)

Under the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class may be <u>settled</u>, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e) (emphasis added). "Review of a proposed class action settlement [agreement] typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make 'a preliminary fairness evaluation.'" <u>In re Nat'l Football League Players' Concussion Injury Litig.</u>, 961 F. Supp. 2d 708, 713-14 (E.D. Pa. 2014). At the second stage, after class members are notified of the settlement, which will be discussed *infra*, the court holds a final fairness hearing where class members may object to the settlement. <u>See</u> Fed. R. Civ. P. 23(e)(1)(B). If the court concludes that the settlement is "fair, reasonable and adequate," the settlement is given final approval.

---

[8] I will defer approval of attorneys' fees until after the final fairness hearing, and upon a review of Class Counsels' forthcoming submission of an affidavit outlining their time spent on this case. I note, however, that while $25,000 represents more than the Class Recovery of $7,500, the unique considerations at work in FDCPA litigation (i.e., Congress' intent to limit class recovery) must be taken into account in assessing whether attorneys' fees are fundamentally fair, adequate, and reasonable.

At this stage, the parties request only that I grant preliminary approval. Ordinarily, "the bar to meet the 'fair, reasonable and adequate' standard is lowered" at the preliminary approval stage. In re Nat'l Football League Players' Concussion Injury Litig., 961 F. Supp. 2d at 714. In essence, preliminary approval may be granted so long as the proposal does not "disclose[] grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation for attorneys, and whether it appears to fall within the range of possible approval." Mehling, 246 F.R.D. at 472 (quoting Thomas v. NCO Fin. Sys., WL 1773035 at *5 (E.D. Pa. July 31, 2002)) (internal quotation marks omitted).

However, the United States Court of Appeals for the Third Circuit has asked district courts to apply a more rigorous, "heightened standard" in cases "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously." In re Pet Food Products Liab. Litig., 629 F.3d 333, 350 (3d Cir. 2010). Such is the case here. Preliminary approval, therefore, must not simply be a judicial "rubber stamp" of the parties' proposed agreement. In re Nat'l Football League Players' Concussion Injury Litig., 961 F. Supp. 2d at 715. I must act as a fiduciary for absent class members. Ehrheart v. Verizon Wireless, 609 F.3d 590, 594 (3d Cir. 2010).

In evaluating preliminary approval of class settlement agreements—particularly where the settlement accompanies a request for class certification—district courts are required to screen for "obvious" problems and deficiencies, which means ensuring that (1) the settlement negotiations occurred at arm's length, (2) there was sufficient discovery, and (3) the proponents of settlement are experienced in similar litigation. Harlan v. Transworld Sys., Inc., 302 F.R.D. 319, 324 (E.D. Pa. 2014). Satisfaction of these factors suggests the agreement generally falls

within the "range of reason," and granting preliminary approval is warranted.[9] See Gates v. Rohm & Haas Co., 248 F.R.D. 434, 438 (E.D. Pa. 2008) ("The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that there are no obvious deficiencies and the settlement falls within the range of reason.") (internal quotations omitted).

1. Arm's Length Negotiations

For purposes of preliminary approval, I conclude that the parties have exhibited sufficient arm's length negotiations. The parties only agreed to settle after I ruled on the parties' cross motions for judgment on the pleadings—both of which were opposed. Indeed, it was only after I found as a matter of law that URS had violated § 1692g(4) of the FDCPA that the parties agreed to settle the claims between them. As such, there is nothing to suggest collusion or inadequate protection of the Class Members' interests during the negotiation process.

2. Sufficient Discovery

I similarly conclude that there was a sufficient period of discovery for the parties to assess the merits and risks of their respective claims and defenses. On December 11, 2014, approximately three weeks after I granted Plaintiff's motion for judgment on the pleadings as it related to URS's liability, I entered a discovery schedule, and the parties "each served and responded to written discovery and began scheduling depositions." (Doc. No. 36, p. 2 ¶ 3.) Nevertheless, protracted discovery has not been necessary because the nature of Plaintiff's claim is purely a statutory violation, which I addressed and ruled on in my November 11, 2014 Order

---

[9] However, in granting final approval of a class settlement agreement, district courts ultimately consider: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 317 (3d Cir. 1998) (citing Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975)).

granting in part her motion for judgment on the pleadings. In other words, additional discovery would yield little value in further developing the merits of the respective claims and defenses involved in this case.

3. Counsel is Experienced in Similar Litigation

Because I have already discussed *supra* the credentials of Andrew T. Thomasson, Craig Thor Kimmel, and Amy Lynn Bennecoff Ginsburg, I will not belabor that evaluation. All three submitted declarations to this Court detailing their qualifications as related to both class actions and FDCPA litigation. (See Pl.'s Ex. B, C, D.) I am satisfied that their collective experience qualifies them to represent the interests of Plaintiff and her fellow Class Members. See Fed. R. Civ. P. 23(g)(1)(A).

Therefore, I will appoint the law firms of Thomasson Law LLC and Kimmel & Silverman, P.C. to serve as Class Counsel. More specifically, I will appoint Mr. Andrew T. Thomasson, Esq., Mr. Craig Thor Kimmel, Esq., and Ms. Amy Lynn Bennecoff Ginsburg, Esq. to represent the class. (See Doc. No. 36, Pl.'s Ex. B, C, D.) Class Counsel is instructed to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(g)(4).

4. "Range of Reason"

Although the above criteria does not suggest any "obvious" deficiencies, because I maintain a heightened duty to protect the interests of absent class members, further evaluation of the Settlement Agreement is warranted.

The FDCPA limits class recovery to the *lesser* of $500,000 *or* 1% of the Defendant's net worth. 15 U.S.C. § 1692k(a)(B)(ii). The parties stipulate—after reviewing URS's tax returns for 2012 and 2013—that $7,500 represents substantially *more* than 1% of URS's net worth. (See Doc. No. 36, Ex. A, p. 4 ¶ 10.) In other words, under the terms of the Settlement, URS will be

paying more than what the class could statutorily recover. This certainly suggests that the proposed settlement falls within the range of possible approval.

Additionally, I have discovered other cases within the Third Circuit with nearly identical facts (technical statutory violations of the FDCPA) that have approved FDCPA class action settlement agreements where each claimant received anywhere between $7.00 and $80.00 See e.g., Little–King v. Hayt Hayt & Landau, 2013 WL 4874349, at *3, 14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); Bonett v. Educ. Debt Servs., Inc., 2003 WL 21658267, at *7 (E.D. Pa. May 9, 2003) ($77.46 per class member); Oslan v. Law Offices of Mitchell N. Kay, 232 F. Supp. 2d 436, 443 (E.D. Pa. 2002) ($62.00 per class member). Therefore, on its face, the minimum recovery of $10.44 per claimant in the case before me appears to fall within an acceptable range of recovery in the context of an FDCPA class settlement.

Finally, and importantly, I note that this litigation primarily concerns a technical statutory violation. As such, many class members are likely unaware of their statutory rights. The proposed Class Settlement Agreement thus provides Class Members with consideration for something that many, if not most, are unaware. See Harlan, 302 F.R.D. at 326. Therefore, even under a heightened standard of review, the proposed settlement agreement—at this stage—falls within an acceptable "range of reason." Accordingly, I will grant the parties' motion for preliminary approval of the Class Settlement Agreement.

    5. <u>Appointment of Named Plaintiff as Class Representative</u>

The parties seek appointment of Plaintiff as the Class Representative. Because Plaintiff (1) commenced this class action lawsuit; (2) has advocated on behalf of herself and all others similarly situated up through and including a favorable ruling on her motion for judgment on the

pleadings and the motion currently before me; (3) has advanced claims typical of the class; and (4) has no antagonistic interests to those of the class, I will appoint her as Class Representative.

With respect to her individual recovery of $2,500, I note that the FDCPA limits her statutory recovery to $1,000. 15 U.S.C. § 1692k(a)(2)(B)(i). Nevertheless, I conclude that the "modest additional incentive" award of $1,500 is reasonable given that she has served on behalf of the proposed class since the beginning of this litigation. Harlan, 302 F.R.D. at 327.

### C.  Notice – Due Process and Fed. R. Civ. P. 23(e)(1) & 23(c)(2)(B)

Having conditionally certified the settlement class, and granted preliminary approval of the settlement itself, I "must direct notice in a reasonable manner to all class members who [will] be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Due process requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Moreover, adequate notice is important in securing due process of law for the class members because they will be bound by any final approval order and judgment. Fry v. Hayt, Hayt & Landau, 198 F.R.D. 461, 474 (E.D. Pa. 2000).

After reviewing the proposed notice, which is straightforward and comprehensive, I conclude that it satisfies due process in both form and substance. As to form, URS will provide a spreadsheet to Class Counsel of all Class Members' last known addresses (according to URS's business records), and the Class Administrator will send the notice to all Class Members via any form of U.S. Mail that provides address forwarding. (Doc. No. 36, Ex. A., p. 8, ¶¶ 19–21.) See also Phillips Petrol. Co. v. Shutts, 472 U.S. 797, 812 (1985) (concluding that "a fully descriptive notice [which] is sent first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process"). If the alleged unlawful conduct at issue involved URS mailing

a letter to each Class Member's last known address, it follows naturally that informing each Class Member of this litigation can be accomplished through the same channel.

Substantively, Federal Rule of Civil Procedure 23(c)(2)(B) also requires that, in a Rule 23(b)(3) action, the class must receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The notice must "clearly and concisely" state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B).

In the class settlement context, the substance of the notice "must [also] inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the [final] fairness hearing." In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 254 (D.N.J. 2000).

I conclude that the eight-page notice adequately informs Class Members of all the requisite information outlined above. Specifically, the notice outlines in plain English: basic information about the nature of this case; Class Members' benefits under the Settlement Agreement; how to exclude one's self from the Settlement (and the date by which notice of exclusion must be executed); Class Counsel's view of the Settlement; how to object to the Settlement (and the date by which Class Members may object); the binding effect of remaining in the Class; and, the release of any claims arising from the collection letter at issue. (Ex. A-1, Doc. No. 36.) Within the major sections of the notice are various subsections with more detailed information. The notice also explains the formula that will be used to allocate payments. Finally,

the notice includes spaces to notify members of their right to participate in the final fairness hearing, which will be scheduled in an accompanying Order to this Memorandum Opinion.

Ultimately, I am satisfied that the proposed notice meets the requirements of due process and Rule 23(c) and (e). I will therefore approve the proposed notice and manner of service.

### III.  CONCLUSION

The parties' joint motion will be granted. Specifically, I will conditionally certify the Settlement Class because the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) have been met. I will preliminarily approve the Settlement Agreement because it falls within the range of reasonableness. Finally, I will approve the proposed notice as it comports with both due process and the requirements of Federal Rule of Civil Procedure 23(c) and (e).

An appropriate Order follows.